IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RONALD J. ROBB,<br><br>    Plaintiff,<br><br>  v.<br><br>RITE AID CORPORATION, JOSEPH FAIRMAN, and DOES ONE through TWENTY, inclusive,<br><br>    Defendants. | No. C 05-1932 CW<br><br>ORDER DENYING PLAINTIFF'S MOTION FOR REMAND AND DENYING IN PART AND GRANTING IN PART DEFENDANTS' MOTION TO DISMISS |

Defendants move for dismissal of this action pursuant to Federal Rules of Civil Procedure Rule 12(b)(6). Plaintiff opposes the motion. Plaintiff moves for remand and for fees and costs pursuant to 28 U.S.C. § 1447(c). Defendants oppose the motion. The matter was heard on July 15, 2005. Having considered the parties' papers, the evidence cited therein and oral argument on the motion, the Court DENIES in part Defendants' motion to dismiss and GRANTS it in part and DENIES Plaintiff's motion to remand.

BACKGROUND

The following information is taken from Plaintiff's Complaint

except where otherwise indicated.  Defendant Rite Aid Corporation is a retailer incorporated in Delaware and headquartered in Pennsylvania.  Defendant Joe Fairman[1] is a regional vice-president for Rite Aid and resides in Sacramento County, California.  Plaintiff is a former employee of Rite Aid now residing in Washington State.[2]

Plaintiff worked for Rite Aid and its predecessors Thrifty PayLess, Inc. and PayLess for thirty-five years.  On or about February 25, 2004, Plaintiff was forced to resign his position as a district manager in charge of monitoring nineteen stores for Rite Aid's Region 42, North Bay District.  Throughout the time surrounding his resignation and for some time before, Plaintiff was under stress because his wife and her mother were experiencing many medical difficulties, and his wife spent half her time caring for her sick mother who lived in Washington State.

Plaintiff's resignation resulted from preparation for an inventory in the Vacaville store.  The Vacaville store manager asked Plaintiff for guidance on what to do with some marked-down and "deleted" merchandise (unsold merchandise no longer a part of regular Rite Aid inventory).  Because there was no written policy on transferring already marked-down goods to a close-out store, Plaintiff contacted his supervisor, Fairman, for guidance.  Fairman instructed Plaintiff to email him the list of the type of goods and

---

[1] Defendants note that Mr. Fairman was erroneously sued as Joseph Fairman; his name is Joe Fairman.

[2] The Notice of Removal lists Plaintiff as a resident of Washington.  Plaintiff does not dispute this.

2

their approximate value. An email with that information was sent to Fairman and Fairman's supervisor. Plaintiff learned that the email had been forwarded up the supervisory chain for final approval, at which point Plaintiff communicated the approval to the Vacaville store manager. The store manager then asked if, in the same transfer, he could include additional deleted goods not previously shown to Plaintiff. The first set of goods had been marked down to half price, but Plaintiff did not think to ask if the additional goods had also been marked down. Plaintiff approved the transfer of the additional goods because the original valuation was only an approximation. Final approval for the transfer was received. The store manager emailed Plaintiff to verify the value at which all the goods should be transferred. Plaintiff authorized the store manager to transfer the goods at retail. The approximate difference in value between the goods priced at retail and the goods marked down was $900. The valuation could be corrected electronically without financial loss to Rite Aid. Plaintiff did not financially gain from the incorrect valuation.

On February 20, 2004, personnel from Rite Aid's Asset Protection and Labor Relations Divisions questioned Plaintiff, who admitted his error, calling it a "lapse in judgment" under time pressure, not intentional inventory fraud. Plaintiff was immediately suspended. He was informed that his offense could result in termination. Fairman recommended that Plaintiff contact Rite Aid Executive Senior Vice President Mark Panzer to see if Panzer would intervene. Panzer did not intervene and, on February 25, 2004, Fairman and Rite Aid human resources personnel

3

forced Plaintiff to resign under threat of termination. Plaintiff alleges that Panzer at one point called him "the old man of the district," and that Panzer was heard to ask, "Can't we find someone younger?" with regard to hiring back another district manager over age fifty.

Based on long-time observation of company practice, Plaintiff did not believe his offense was one for which the company normally considered termination appropriate. For example, a $35,000 inventory error by Plaintiff had been overlooked in the past. Also, Plaintiff, on recommendation from Fairman, gave a store manager only a written warning for the disappearance of inventory.

Plaintiff received very positive work evaluations throughout his employment with Rite Aid. In fact, his resignation form dated February 27, 2004, listed him as a "very good" employee. In 2001, the regional vice president had recommended that Plaintiff train new district managers based on Plaintiff's experience. Plaintiff had received regular promotions and wage increases throughout his thirty-five year work history. In 2002, Plaintiff signed an acknowledgment of receipt of Rite Aid's "An Associate Atlas," an employee handbook, which included various statements to the effect that employment was at-will and that at-will status could only be changed by a written agreement signed by an officer of Rite Aid.[3]

---

[3] Plaintiff refers to the document, but does not attach it to his complaint. Defendants request judicial notice of the document which is GRANTED. A court may consider documents "whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading." Branch v. Tunnell, 14 F.3d 449, 454 (9th Cir. 1994), overruled on other grounds in Galbraith v. County of Santa Clara, 307 F.3d 1119, 1127 (9th Cir. 2002).

4

The handbook also included an ethics section and a section on standards of conduct which included factors to be considered in imposing discipline, such as length of employment and the circumstances under which misconduct occurred.

Plaintiff and Fairman had a close relationship, traveling together frequently and discussing personal matters. Fairman knew of Plaintiff's family's health issues. Plaintiff asked Fairman on more than one occasion for a transfer to Washington State, the residence of his sick mother-in-law. Fairman made statements to Plaintiff that Plaintiff's plan to continue working at Rite Aid until his retirement at age sixty-two was a "good plan." Fairman discussed the performance of other district managers with Plaintiff and led Plaintiff to understand that he had a unique status at Rite Aid based on his many years as a district manager.

Plaintiff filed a complaint on February 24, 2005, in the California Superior Court of Sonoma County alleging 1) breach of employment contract, 2) breach of the covenant of good faith and fair dealing, 3) age discrimination in violation of California Government Code section 12941 and 4) negligent infliction of emotional distress. On May 10, 2005, Defendants removed the case to this Court.

## LEGAL STANDARD

I.  Remand to State Court

A defendant may remove a civil action filed in State court to federal district court so long as the district court could have exercised original jurisdiction over the matter. 28 U.S.C. § 1441(a). However, a defendant may not remove based on diversity

a civil action filed in State court if one "of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought."  28 U.S.C. § 1441(b). Title 28 U.S.C. section 1447 provides that if at any time before judgment it appears that the district court lacks subject matter jurisdiction over a case previously removed from State court, the case must be remanded.  § 1447(c).  On a motion to remand, the scope of the removal statute must be strictly construed.  Gaus v. Miles, Inc., 980 F.2d 564, 566 (9th Cir. 1992).  "The 'strong presumption' against removal jurisdiction means that the defendant always has the burden of establishing that removal is proper."  Id. Courts should resolve doubts as to removability in favor of remanding the case to State court.  Id.

    A.   Federal Question Jurisdiction

Ordinarily, federal question jurisdiction is determined by examining the face of the plaintiff's properly pleaded complaint. Caterpillar Inc. v. Williams, 482 U.S. 386, 392 (1987).  When a plaintiff has suffered an injury that could give rise to both federal and State causes of action, the plaintiff "is free to ignore the federal cause of action and rest the claim solely on a state cause of action."  Garibaldi v. Lucky Food Stores, Inc., 726 F.2d 1367, 1370 (9th Cir. 1984).  A plaintiff may not, however, artfully plead a complaint to avoid federal jurisdiction by "omitting from the complaint federal law essential to his claim, or by casting in state law terms a claim that can be made only under federal law."  Olguin v. Inspiration Consol. Copper Co., 740 F.2d 1468, 1472 (9th Cir. 1984).  "Once an area of state law has been

6

completely pre-empted, any claim purportedly based on that pre-empted state law is considered, from its inception, a federal claim, and therefore arises under federal law." Caterpillar, 482 U.S. at 392.

B.  Diversity Jurisdiction

District courts have original jurisdiction over all civil actions "where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens of different States."  28 U.S.C. § 1332(a).  When federal subject matter jurisdiction is predicated on diversity of citizenship, complete diversity must exist between the opposing parties.  Owen Equip. & Erection Co. v. Kroger, 437 U.S. 365, 373-74 (1978).

A defendant may remove a case with a diversity-destroying defendant on the basis of diversity jurisdiction and seek to persuade the district court that this defendant was fraudulently joined.  McCabe v. General Foods Corp., 811 F.2d 1336, 1339 (9th Cir. 1987).  "If the plaintiff fails to state a cause of action against a resident defendant, and the failure is obvious according to the settled rules of the state, the joinder of the resident defendant is fraudulent."  Id. at 1339.  The defendant need not show that the joinder of the diversity-destroying party was for the purpose of preventing removal.  Instead, the defendant must demonstrate that there is no possibility that the plaintiff would be able to establish a cause of action under State law against the alleged sham defendant.  Id.; see also Ritchey v. Upjohn Drug Co., 139 F.3d 1313, 1318 (9th Cir. 1998).  The defendant seeking removal

7

1  is entitled to present facts showing that the joinder is
2  fraudulent.  <u>McCabe</u>, 811 F.2d at 1339.
3  II.  Failure to State a Claim
4      A motion to dismiss for failure to state a claim will be
5  denied unless it is "clear that no relief could be granted under
6  any set of facts that could be proved consistent with the
7  allegations."  <u>Falkowski v. Imation Corp</u>., 309 F.3d 1123, 1132 (9th
8  Cir. 2002), <u>citing</u> <u>Swierkiewicz v. Sorema N.A.</u>, 534 U.S. 506
9  (2002).  All material allegations in the complaint will be taken as
10 true and construed in the light most favorable to the plaintiff.
11 <u>NL Indus., Inc. v. Kaplan</u>, 792 F.2d 896, 898 (9th Cir. 1986).  A
12 complaint must contain a "short and plain statement of the claim
13 showing that the pleader is entitled to relief."  Fed. R. Civ. P.
14 8(a).  "Each averment of a pleading shall be simple, concise, and
15 direct.  No technical forms of pleading or motions are required."
16 Fed. R. Civ. P. 8(e).  These rules "do not require a claimant to
17 set out in detail the facts upon which he bases his claim.  To the
18 contrary, all the Rules require is 'a short and plain statement of
19 the claim' that will give the defendant fair notice of what the
20 plaintiff's claim is and the grounds on which it rests."  <u>Conley v.
21 Gibson</u>, 355 U.S. 41, 47 (1957).
22     When granting a motion to dismiss, a court is generally
23 required to grant a plaintiff leave to amend, even if no request to
24 amend the pleading was made, unless amendment would be futile.
25 <u>Cook, Perkiss & Liehe, Inc. v. N. Cal. Collection Serv. Inc.</u>, 911
26 F.2d 242, 246-47 (9th Cir. 1990).  In determining whether amendment
27 would be futile, a court examines whether the complaint could be
28

8

1  amended to cure the defect requiring dismissal "without
2  contradicting any of the allegations of [the] original complaint."
3  Reddy v. Litton Indus., Inc., 912 F.2d 291, 296 (9th Cir. 1990).
4  Leave to amend should be liberally granted, but an amended
5  complaint cannot allege facts inconsistent with the challenged
6  pleading. Id. at 296-97.

## DISCUSSION

I. Remand

Defendants removed this case to this Court on the grounds that Fairman was joined fraudulently, and thus federal diversity jurisdiction exists.[4] Plaintiff argues that 28 U.S.C. section 1441(b) prevents removal because Fairman is a properly joined defendant and is a citizen of the State in which this civil action was brought. Defendants assert Plaintiff cannot maintain against Fairman a claim of negligent infliction of emotional distress (NIED), the only claim alleged against him, and that therefore he is fraudulently joined.

The traditional test for a claim of NIED in California is one of reasonable forseeability. Molien v. Kaiser Found. Hosps., 27 Cal. 3d 916, 923 (1980). However, the law of NIED is evolving in California, and it is seen now not as an independent tort, but "simply as the tort of negligence." Klein v. Children's Hosp. Med.

---

[4] Defendants also removed on the grounds that Plaintiff's claim for breach of the covenant of good faith and fair dealing raises a federal question on its face pursuant to 28 U.S.C. sections 1331, 1441 and 1446 under the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. section 1001, et seq. Because the Court finds diversity jurisdiction, it does not address ERISA in regard to remand. ERISA preemption is discussed in the context of the motion to dismiss.

9

Ctr., 46 Cal. App. 4th 889, 894 (1996). A plaintiff must demonstrate a duty, breach, causation and damages. Id. A negligent act must be part of the claim. See Miller v. Fairchild Indus., Inc., 797 F.2d 727, 738 (9th Cir. 1986) (finding under California tort law an intentional discharge could not also be negligent).

A plaintiff cannot recover for emotional distress suffered in the normal course of an employment relationship, including distress due to termination, because all such harm is covered by worker's compensation. Phillips v. Gemini Moving Specialists, 63 Cal. App. 4th 563, 577 (1998). Work environments that are discriminatory are not part of the normal course of employment, and California courts have allowed claims of both intentional and negligent infliction of emotional distress to proceed against employers in cases where discrimination has been alleged. See Accardi v. Superior Court, 17 Cal. App. 4th 341, 352-53 (1993) (denying dismissal of a female police officer's claim for intentional infliction of emotional distress based on harassment and discrimination); Fretland v. County of Humboldt, 69 Cal. App. 4th 1478, 1492 (1999) (allowing disabled plaintiff's claims for intentional and negligent infliction of emotional distress based on harassment, assault and discrimination). But, a supervisor or co-employee cannot be sued for tortious conduct undertaken in the course of job-related functions. Sheppard v. Freeman, 67 Cal. App. 4th 339, 343 (1998) (holding that a former employee cannot sue a former co-employee for conduct related to personnel issues, unless mandated by statute, regardless of whether the co-employee was acting within the scope

10

of his or her employment); Graw v. Los Angeles County Metro. Transp. Auth., 52 F. Supp. 2d 1152, 1155 (C.D. Cal. 1999) (holding that the California Supreme Court would find Sheppard too broad, but would allow an exemption from tort suit for actions by managers towards employees that were at least partially beneficial to the company). Further, an employee cannot maintain a NIED claim arising from a violation of the California Fair Employment and Housing Act against another employee because a discrimination claim can only be made against an employer. Reno v. Baird, 18 Cal. 4th 640, 643 (1998).

In his complaint, Plaintiff alleges that Defendants should have foreseen that Plaintiff would suffer emotional shock when forced to retire after thirty-five years of positive service to Rite Aid. He alleges that Fairman forced him to resign in spite of knowing his stressful family situation.

In his motion to remand, Plaintiff asks the Court's permission to amend his complaint to clarify that the claim against Fairman does not arise out of discriminatory conduct, but rather is based on a unique personal relationship between Plaintiff and Fairman. In his reply, Plaintiff indicates that his claim is based on the fact that Fairman asked him to conduct the inventory quickly and that Fairman did not take responsibility for his role in Plaintiff's mistake although he knew Plaintiff was emotionally vulnerable because of his family situation.

Even if Plaintiff were to amend his complaint to make such allegations, it would not change the fact that Fairman was acting in his role as Plaintiff's supervisor throughout the time leading

11

to Plaintiff's resignation.  Fairman may have gained knowledge of Plaintiff's family situation outside of work, but the acts that Plaintiff alleges caused him emotional distress, forcing Plaintiff to resign (as alleged in his complaint) and failing to intervene (as argued in his reply), occurred within the context of Fairman's role as Plaintiff's supervisor.  Because Fairman was acting within the scope of his managerial position at Rite Aid, pursuant to Sheppard and Graw, he cannot be sued for NIED.  Plaintiff does not allege any negligent or intentional act by Fairman outside of his supervisory role.  Therefore, Defendants' motion to dismiss the claim against Fairman is GRANTED with leave to amend.  Should Plaintiff choose to amend his complaint to state a claim for NIED against Fairman, he must allege a specific negligent action that occurred outside the scope of Fairman's employment at Rite Aid.

Without Fairman, no resident of the State in which the civil action was brought remains a party to this action.  Therefore, removal on the basis of diversity jurisdiction is not barred by 28 U.S.C. section 1441(b).  The motion for remand is DENIED.

II.  Failure to State a Claim

    A.  Preemption by ERISA

Defendants move to dismiss all causes of action for failure to state a claim on the grounds of ERISA preemption.  Defendants allege that the first two causes of action based on Plaintiff's alleged employment contract are directly preempted and that the third and fourth causes of action are preempted because the allegations in the previous causes of action are re-alleged therein.  Plaintiff argues that ERISA does not preempt any of his

12

claims because his allegations regarding a retirement plan were meant to be an example of the consequences of Plaintiff's forced retirement, not the reason for the forced resignation. He asks that, if the complaint is not clear on this point, he be allowed leave to amend.

Section 510 of ERISA states: "It shall be unlawful for any person to discharge . . . or discriminate against a participant or beneficiary . . . for the purpose of interfering with the attainment of any right to which such participant may become entitled under the plan." 29 U.S.C. § 1140. The purpose of ERISA is to "provide a uniform regulatory regime over employee benefit plans." Aetna Health, Inc., v. Davila, 124 S. Ct. 2488, 2495 (2004). Section 1132(a)(1)(B) creates a federal cause of action to recover benefits due or enforce rights under ERISA plans and section 1144(a) provides that ERISA "shall supercede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan described in section 1003(a) of this title."

Where a plaintiff alleges that the employer terminated him or her to avoid paying benefits or to prevent him or her from obtaining benefits from an ERISA plan, the claim relates to the plan and is preempted by ERISA. Campbell v. Aerospace Corp., 123 F.3d 1308, 1313 (9th Cir. 1997); Tingey v. Pixley-Richards West, Inc., 953 F.2d 1124, 1131 (9th Cir. 1991). However, where the plaintiff's complaint does not plead an ERISA cause of action, even though it could have, and ERISA is not the only basis for the complaint, it is not preempted. Karambelas v. Hughes Aircraft Co., 992 F.2d 971, 974 (9th Cir. 1993). When "the existence of a

13

pension plan is a critical factor in establishing liability under the State's wrongful discharge law" and an employer's "principal" motivation in terminating an employee is a "pension-defeating motive," ERISA completely preempts the State law claims based on termination. Ingersoll-Rand Co. v. McClendon, 498 U.S. 133, 140, 146 (1990). However, if a plaintiff's loss of benefits from a pension plan is a "mere consequence of, but not a motivating factor behind, the termination of benefits," the claim is not preempted by ERISA. Ethridge v Harbor House Restaurant, 861 F.2d 1389, 1405 (9th Cir. 1988)(internal quotations omitted).

Citing Plaintiff's complaint, Defendants argue that Plaintiff alleges that Defendants forced Plaintiff's resignation to deprive him of his pension benefits. There are two allegations in Plaintiff's complaint that refer to retirement benefits. Paragraph 39 states that Rite Aid breached the alleged employment contract "for the purpose of frustrating Plaintiff's enjoyment of benefits of the contract. Plaintiff is informed and believes that Defendant unfairly frustrated Plaintiff's right to receive one or more agreements the parties actually made prior to the forced resignation, specifically Plaintiff's retirement benefits." Compl. ¶ 39. Plaintiff also alleges that he was "terminated in bad faith so as to deprive Plaintiff of an independent benefit in terms of his eventual retirement." Compl. ¶ 38.

Paragraph 39 can be read to allege that the loss of retirement benefits was a consequence of his resignation. Plaintiff alleges that Rite Aid "frustrated" his right to receive retirement benefits when Defendant fired him. Paragraph 38 is also arguably ambiguous.

14

Plaintiff states in his opposition that Rite Aid's contribution to his plan was so minimal that it could not have been a significant factor in its decision to force Plaintiff to resign and that he intends in his complaint merely to mention the loss of the plan benefits as a consequence of his forced retirement. Plaintiff asks for leave to amend his complaint, if this is not clear. The complaint, although ambiguous, allows for that interpretation. The Court will strike the offending phrases, which will clarify that none of the claims is preempted by ERISA.[5] However, if Plaintiff decides to amend his complaint, he must omit these phrases. Because Defendants have not filed a responsive pleading, Plaintiff may amend without permission of the Court. See Federal Rule of Civil Procedure 15(a) (providing that "[a] party may amend the party's pleading once as a matter of course at any time before a responsive pleading is served"); Fed. R. Civ. P. 7(a). The motion to dismiss is DENIED.

B.  Contract Claims

In the alternative, Defendants move to dismiss Plaintiff's claims for breach of contract and breach of the covenant of good faith and fair dealing because Plaintiff was an "at-will" employee and thus had no employment contract on which he can sue. Plaintiff opposes, arguing that he had an implied-in-fact employment contract.

---

[5] Plaintiff's age discrimination claim is not ERISA-preempted for the further reason that "ERISA does not preempt FEHA provisions that merely prohibit employers from discriminating against employees on the basis of age, race, sex, or religion." Sorosky v. Burroughs Corp., 826 F.2d 794, 800 (9th Cir. 1987); Lane v. Goren 743 F.2d 1337, 1340 (9th Cir. 1984).

15

California Labor Code § 2922 provides that "an employment, having no specified term, may be terminated at the will of either party on notice to the other."  However, the "at-will" presumption provided in section 2922 may be overcome by an implied agreement not to terminate without good cause.  Foley v. Interactive Data Corp., 47 Cal. 3d 654, 680 (1988).  The Foley court cited several factors that may be considered in determining whether such an implied agreement exists, including "'the personnel policies or practices of the employer, the employee's longevity of service, actions or communications by the employer reflecting assurances of continued employment, and the practices of the industry in which the employee is engaged.'"  Id. (quoting Pugh v. See's Candies, 116 Cal. App. 3d 311, 326-27 (1981)).  An important consideration is what the parties actually and mutually understood, based not only on express words but on conduct.  Guz v. Bechtel Nat., Inc., 24 Cal. 4th 317, 337 (2000).  Although a statement in a written personnel policy that employment is at-will creates a presumption that employment is at-will, it does not by itself preclude a plaintiff from rebutting that presumption.  But if there is an express, written at-will employment contract signed by the employee, that presumption cannot be overcome.  Id. at 339-40.  If an implied-in-fact contract is found, a breach of the implied employment contract claim requires a finding that the employer terminated the employee without good cause.  Cotran v. Rollins Hudig Hall Int'l, 17 Cal. 4th 93, 100-07 (1998).

Defendants point to several excerpts from Rite Aid's Associate Atlas which state that employment is at-will and that an employee's

16

status can only be changed by means of a written agreement signed by a Rite Aid officer.  Plaintiff signed an acknowledgment and receipt form for that handbook in 2002.  Defendants assert that because he signed the form acknowledging his at-will status, Plaintiff cannot contend that his employment was anything but at-will.

The acknowledgment and receipt form is not an employment contract.  Nonetheless, the written policies in the handbook do present strong evidence of at-will employment.  Plaintiff attempts to overcome this presumption with several allegations.  First, Plaintiff argues that sections in the handbook indicate that termination of a Rite Aid employee follows a certain pattern:  "In arriving at a decision for proper action, the following will be considered:  The seriousness of the infraction. The associate's past record.  The circumstances surrounding the matter." Compl. ¶29.  Plaintiff alleges that he was not disciplined for an earlier $35,000 inventory error and that he did not fire a store manager after consulting with Fairman when it appeared the manager had been responsible for the disappearance of merchandise.  Plaintiff alleges various instances when he discussed his future at Rite Aid with Fairman and was told that his intent to work at Rite Aid until retirement was "a good plan."  Plaintiff also cites his thirty-five years with Rite Aid, very positive evaluations of his work, including positive comments on his resignation form, and frequent promotions and pay raises.  Plaintiff also alleges that his former supervisor recommended that he train other district managers and that he discussed the possible future careers of other district

17

1 managers with Fairman and came to understand that he had a unique
2 position as a longstanding district manager.
3    A plaintiff does not have to allege in complete detail all the
4 facts upon which he bases his claim.  Here, Plaintiff's allegations
5 are sufficient to create a question as to whether he can overcome
6 the presumption of at-will employment.  Therefore, Defendants'
7 motion to dismiss Plaintiff's claims of breach of contract and
8 breach of the covenant of good faith and fair dealing must be
9 DENIED.

## CONCLUSION

11    For the foregoing reasons, the Court DENIES in part
12 Defendants' motion to dismiss and GRANTS it in part and DENIES
13 Plaintiff's motion for remand (Docket Nos. 9 and 14) without
14 prejudice.  The motion to dismiss the claims against Defendant
15 Fairman is GRANTED with leave to amend.  Should Plaintiff amend his
16 complaint he must omit the phrases referring to retirement benefits
17 and state a claim against Fairman for NIED that does not arise from
18 Fairman's actions as an employee of Rite Aid.  Plaintiff must file
19 that amended complaint by July 29, 2005.
20    IT IS SO ORDERED.

24 Dated: 7/21/05

_____
CLAUDIA WILKEN
United States District Judge

18